Good morning, Your Honors. May it please the Court. My name is Janine Liao. I'm here on behalf of the United Food & Commercial Workers Local Unions and the 20,000 grocery workers that we represent throughout Southern California. This case involves Ralph's Grocery Company's persistent refusal to produce documents that were requested by charging parties over ten years ago. Yeah, and my question is, to get some kind of a context, what's this all started in 2003 when the CBA collapsed and fell apart, negotiations lockout, Ralph's and some executives did some really stupid things, and here we are in 2016, and I don't understand why this is still alive. There must be a reason. We don't either. It's because Ralph's has persistently refused to produce this information. But if you win, what's the result? What benefit will you derive from winning, having the audit, all that kind of stuff in an unfair labor practice dispute right now? What will you get that you haven't already gotten? All the documents from the audit. And what good will that do you now, practically speaking? The audit documents include witness statements, notes, the way Ralph's orchestrated its rehiring. Now, I want to, I mean, your point was absolutely right that there's all this stuff that happened ten years ago, but, I mean, this is not a garden variety case. We're here because Ralph's locked out 19,000 employees and then rehired over 1,000. We know that. They used false this and false that. And the company got convicted, the employees got convicted, but it still isn't clear. I'm not saying there isn't anything here, but you win. What's the consequence for you? What is all this all about? The unfair labor practice, don't you, haven't you already won that, hands down? Well, the important thing for us is that Ralph's needs to understand that when we are owed documents, I mean, we take our role as the collective bargaining representative of these workers very, very seriously. And if Ralph's is not going to turn over documents that they're required to turn over and do it on the basis of attorney-client privilege, which they waived almost ten years ago through their plea agreement and through disclosure to the U.S. Attorney's Office, then what's to keep them from doing that in any other information request that comes out? I think the question is, other than teaching Ralph's a lesson, okay, so other than teaching them a lesson, what's next? I would say it's not teaching them a lesson, it's getting the information that we're entitled to. And what are you going to do with it when you get it? Well, once we get the information, we'll review it, of course, the audit materials, we'll see the witness statements, who did what, who orchestrated what, how it was done in this way that nobody knew about it. And we are, we're constantly in new negotiations with the company. This doesn't have anything to do with a current case or controversy. There's just this teach Ralph a lesson, get the documents. You're not going to do it again, but you're not going to do anything with the documents. Just get ready for the next one. You know what happened? I mean, the U.S. Attorney unmasked this thing 17 ways from Sunday. You know exactly what happened. We don't. Probably most of the employees don't even work there anymore. A lot of them do. We have 20-plus veteran employees who are still there. And this is the only way for us to see. So you get the documents. What are you going to do with them in the context of pursuing an unfair labor practice claim? Pursuing an unfair labor practice? Yeah. I mean, don't you already, haven't you already won that? Yes, yes. We're not going to pursue a new claim on the basis of those documents. So what is the point? The point is that we were entitled to these documents a long time ago. You've got the Walmart decision. Yes, that Ralph's had, has repeatedly, you know, hidden behind this privilege. I mean, it seems to me that you're fighting because you can fight. No, no, it's not just that. I mean, this is this is information that is important to us. It's important to the 20,000 grocery workers that many of whom are still employed, but also who suffered through this period. What does important mean? It's important to those grocery workers who are still employed. Important, meaning that it is important to their ongoing employment, to their career. I don't understand what important means. In what respect? I mean, for the for the for the unions, it is it is really important to win, to have that. It is also important to win. But that's not what the point is here. It's it's that we're entitled to this information. And that if and that Ralph's has, you know, continued to say that they have this privilege over these documents. But they disclose these already. An unfair labor practice dispute is over. Yes. Yes. Well, well, that maybe this is where I can segue to our only the what we're requesting here. Obviously, we want enforcement of the board order. But I mean, of the of the key decisions in the board order. But we are requesting remand to the board for determination of litigation expenses. And that is why that is why we're here appealing right now. Bring that up. And the other side says, hey, it's too late. You waived that. You forfeited it. Well, Section 10 East specifically states that it is it's forfeited unless there are extraordinary circumstances. We have a lot of extraordinary circumstances here. So first, there is a change in in the policy and law of the board with regard to requesting litigation expenses in the past. If you look at all the general counsel memos, it's mostly for first part. It's for first bargaining contract cases and other other bargaining ULPs. But here they're in about before the board decision was issued. There was an advice memorandum that came out that explained that this these litigation expenses could be requested for a different type of case. And in that particular case, it was it involved an employer who was trying to enforce an unlawful arbitration provision. So the so the general counsel stated that we could seek litigation expenses, that that party could seek litigation expenses for any efforts to to challenge the employer in that regard. And so that signified to to us that that we can get litigation expenses in the case. The board has issued issued remedial order sui sponte in the past where it was not it was not addressed at the lower levels. And we were hoping that the board would do that. They didn't. And that was one of our extraordinary circumstances. The other is the delay in this case. The last time we requested we submitted a motion to reorder. The board issued a decision without to reopen. The board issued a decision before responding to that. And then we had to file a motion for reconsideration and to reopen. And then it was addressed over a year later. And we we came to the court for that reason, that we have those extraordinary circumstances. The delays of the board in resolving the case. I mean, you can blame Ralph for a lot of things here. But can you really blame Ralph for that? Yes, because if they had produced those documents, that's somewhat circular. That's somewhat circular reasoning, isn't it? I mean, but but but it's but it's it's true. I mean, if they had disclosed it, we would have we wouldn't we wouldn't be here. None of us would be here. But then you should always be entitled to litigating expenses in every case, right? No, this is this is particularly no. And we and we and we don't and we don't. This is this is a unique case. I think your honors can agree that this is a very unique case where it came from, what it's gone through. Believe me, we do not I we do not want this to live on at our forever. We don't I think it's moot, frankly, and you're arguing about some evidence that should or should not have been admitted. But the controversy, the over and the overriding controversy is moots gone. Well, your honor, we respectfully disagree. Now, the reason why you would say it's not moot is because you're saying you're entitled to the fees. Is that right? That's it. That's your basis for keeping this alive. Yes. Yes. On from our position. Yes. On the fees. Correct. Correct. That's the only thing that we're asking for. And we're specifically asking for this court to remand to to order the fees and remand the board around the issue to the board for determination of the amount. These only. That's it. That's what. Yes. Correct. That's that's correct. Yes. At this point, that is what it is. I do want to point out really quickly that all of the cases that were cited. First of all, that the board doesn't dispute our request on the merits. It's solely a jurisdictional argument. And as I explained, we do have extraordinary circumstances here. If you look at all the cases cited by the board and even the cases decided by this court, they were all distinguished in that they did not involve extraordinary circumstances. And in one particular case, the argument was presented that an extraordinary circumstance was that the board was too quick. It was too quick in in in enforcing the board or moving to enforce the board order. And that is not the case here. It is a delay and it is supported by the fifth circuit case. The board says a lot about this advice memorandum. And among other things, it says the advice memorandum was issued one year prior to the board supplemental order. The union could have filed a motion for reconsideration based on that memorandum within the appropriate time period after the board's supplemental order, but not do so and has not given any reason for its failure to do so. Your answer to this is? Our reason is that we we agree that it was a year before and you didn't do it. It was. Yes, we do. We do. We I mean, we were hoping that the board would issue this, that the board would take. Hope is not a strategy, especially in court. Yes, we understand. But you agree you didn't do anything for a year. Well, we agree. If you look at the record, we did not file anything within that time period. Doesn't that sink you? No, we don't believe so, because there are extraordinary circumstances here. And because because we thought the board was going to issue a decision, you thought our hope was that and if they didn't, we were going to go. We were going to bring this to the court's attention, to this court's attention. So, OK, so in other words, you're telling us you deliberately made a decision not to do it. You hope that we would. Well, I think that what you said. No, no, no. I think so. There's there's two specific. That's what you just said. There's two specific issues I would really like to time out, time out. I just heard you say we hope that this court would do it. No, we we when the board didn't do it. Right. We. So you decided to come to this court for that remedy because. So you were sitting there waiting for the court to do something. Waiting for this court to do something on that court. But we know. No, we next. No, no. All of that is what we'll do. We're going to give you one minute for rebuttal. Thank you very much, Your Honor. Reset the time for 10 minutes for for. Good morning, please, the court. I'm Timothy Ryan representing the Ralph's Grocery Company. Why don't you give them the documents? That's the question I would have asked, too. The reason is, is because the documents have confidential. They are attorney client privilege. There are matters that are not to be publicly. They're all over the place. You gave them to the U.S. attorney's office. They've been used everywhere. They've been given to the McMahon defendants. They're every place. No, they're nowhere. They're nowhere. They're at the they're at the U.S. courthouse, probably. And maybe the attorneys who represented the individual hasn't. But they're not widely distributed. The concern is, did the defendants get them in the in the criminal case? Did the company get them? What was the waiver of privilege? They were turned over. Well, we can talk about the 102.48 issue about whether they should have been admitted into this case. The answer is they shouldn't have been because of the of the rule, the equivalent of Rule 60 under the Federal Rules of Civil Procedure. They shouldn't have been released. And that wouldn't be an issue if they hadn't been. But in terms of the documents, what's what's the harm? The harm is, is it involves confidential dealings during the strike and the lockout involving employees, including revealing which employees worked during the strike and that sort of thing. And no good can come from giving that to the union. In my point of view, let me let me start at the beginning a little bit in this case, you've raised what I'll call a no canning argument. We did. OK, a 29 U.S.C. 160 E says that you've got to make this at a certain time. And I believe the first time this argument was made was to this court. Is that right? The no canning argument. That's correct. So why isn't this whole thing waived, the whole no canning argument on a 29 U.S.C. 160 E? I think the best argument is that it's an extraordinary circumstance. Everything is an extraordinary circumstance. I mean, the record shows that you did nothing about this until it got up to us. Well, the extraordinary circumstance, we didn't have any place to do it except we got a few because the no canning decision came out after. Well, hold on. It was in the D.C. Circuit. The D.C. Circuit decision was came down. It did. Yes. Before. So there was the D.C. Circuit, which is a very recognized court in terms of administrative law, said there's a problem with the board because these recess appointments were invalid. And yet you had that decision. You didn't make the argument, correct? That is correct. Why not? Because we knew we were headed to this court. But you made a conscious decision not to make it. Well, I don't know how I would have made it anywhere but here. You didn't make it, for example, you didn't make it to the ALJ, you didn't make it to the board itself, that you board, you are invalid because of the resource, the recess appointment problem. Well, you know, that's that's what the decision, the recal, recal case that you cited to us about and they they parsed that out. What is an extraordinary circumstance and what isn't an extraordinary circumstance. And our situation is an extraordinary circumstance. This is the first time in the history of the nation where a president has made intra session appointments during the 10 day, during a 10 day recess, recess, recess period. That's true. That's why I think the D.C. Circuit case should have been popped out like a Christmas tree. And anybody would have grabbed on to that at the at the appropriate time and made that argument to the board to be, to be, to be frank. I hope you're always frank. So don't bother to say that I am. Other people did make that, other people made that and the board routine response was, that's a circuit court opinion. We don't pay any attention to circuit court opinions. So but but don't you know that you've got to make these decisions down below so that then we have the ability to even hear them? Well, you know, as Judge Owen suggested, well, I mean, the law says don't raise it down below. We don't get to hear it. Well, the decision of the of the of the court in Ocani at the circuit level, they talked about decisions of the board like this being void ab initio. It was so why didn't you make that? I mean, I hate to keep jumping on this, but why wasn't the decision made at the appropriate time? Well, I think that that the view was that the appropriate time was when we get to the circuit court because the board was going to pay no attention. So that was the decision that held with the board. Let's just go to the circuit court. I mean, we're a court of appeals. We're not, of course, a court of first resort. And it's it's black letter law that you've got to preserve your record and do those at the appropriate time or else is the law says here you don't get to bring things up to us that you didn't appropriately bring up to the board. Well, that that that that may be. But I think given the type of decision it was, that is a nullity that we did need to bring it back before the board to raise that issue before the board. OK, so let's assume for a moment that we have jurisdiction under 29 USC 160 to even hear this argument. I think the next question is, is that there have been a number of cases that have held that in this null canning situation. Ultimately, it's harmless error that so long as a properly constituted quorum with properly appointed members. Reviewed something, it's OK, even if a previous one was wasn't valid for some reason, what's your response to those? I understand that that issue is it depends on the type of of of error it is, if it's a structural error, if there's a structural problem, which is what the canning case said about about the board here, those types of decisions. You can't rid the case of taint by just at the end of the case, giving it to a newly constituted board who will kind of look back and bless what happened before or just review what happened before. It's my understanding of the law that in those situations, and that's the that's the Landry case where they talk about a structural defect, rendering an agency decision would have an issue and it cannot later. So you either want us to start over or to affirm the previous decision in your favor? Well, I prefer the latter, of course. Yeah, but let's say we let's say we don't buy that. You want to go back and start this whole thing all over again? Oh, truthfully, no. Well, so I don't know. I just don't understand this case. This this reminds me of the time I went to Yellowstone and saw a bunch of bull elks fighting. Why? Because they could fight. Well, you don't want to go back and start over again. That's where you're heading. Well, let me let me suggest because we're speaking for myself. We're not going to send this back and say the first that the first thing rules and it's all over. So if that doesn't happen, then you don't want to start again. So then where the hell are you? Excuse me again. Frankly, what I would like this court. Frankly, yes. Again, I would I would I would like to put this case. I'd like to to restart the clock at that time when the 2012 decision had been issued and before the motion for reconsideration has been made. And if the union wants to do it, let them make that motion again. But I'd also like this court to rule on the one one or two point four eight issue. The the issue of whether evidence can be admitted into the record that didn't exist at the time of the hearing. It did exist. That's the problem here. That evidence did exist. You just hit it. This is not newly discovered evidence in the term that it didn't exist. Everybody knew about it. And I think the Wal-Mart decision makes a lot of sense. If at any time during the pendency of this thing and it's been pending forever, you waive the privilege, you're waived the privilege and it can now come in. You're going to lose the privilege thing. Let's assume you lose the privilege thing. You don't want to start over again. I still don't understand what this is all about. Well, it remains, from Ralph's point of view, an attorney client privilege issue, and it's an important privilege and it's an important issue to the company. And you think this whole thing is moot except for the litigation expenses? Well, the litigation for labor practice is gone. It is. Now you're arguing about what evidence ought to go into the to the decision on unfair labor practice. But that's gone. And as a matter of fact, we after the second decision, the company after the first decision, the company complied with everything except turning over the attorney client. So that is the whole that whole thing is gone. And you don't want to start all over again. There have been three or four collective bargaining agreements negotiated since. OK, if we do what you want, don't you revive the fee request? Yes. The union's fee request? Yeah, I don't think so. If we start all over again, you don't revive the fee request. Well, they won't be entitled to fees in any events, my belief. And this is this is normal NLRB litigation. The reason for the delay is new process steel turned everything back and then and then the the no canny decision turned everything back. And there was delay after delay after delay, mostly agency delay, not delay on either side, either party side. What would be the consequences if we decided this whole thing is just moot except for the litigation expenses and dealt with that separately? That you'd be happy. Yes, I suppose I would. If that was the end of it. That's what you're looking for, is the end of it. Well, and sitting and sitting on the continuing to sit on the documents. Have you tried to get those from another place? I mean, what about the independent didn't the individual defendants get these or am I missing something? Well, no, the way that is, maybe maybe they did. But but but we don't know for sure because anybody ask them, they're not cooperating with us. And that's for sure. And again, in NLRB proceedings, there's no discovery. So we didn't have a chance to find out what was going on in this case until we showed up for the litigation. So I don't know. But as it stands right now, we have an ALJ ruling saying that the documents should be turned over, correct? Right. And we have a board order enforcing it. Right. That's where we stand right now. So if we were to declare it moot, this kind of gets back to the where are we in this case? How far back do we go? I know you want to go back to this 2010 decision. Yes. Is it 10 or 12? I've lost track. Ralph's two. Yes, you have to. But well, and what would happen if we went back there? The union would then do just like they did last time. They'd make their motion for reconsideration. We again would raise this issue, the one or two point four eight issue, if they if they did that, maybe they're as tired of this as I am. Well, look, we peppered you a lot with a lot of questions. I will give you one minute for rebuttal, OK? Thank you. Good morning, I'm Heather Beard with the NLRB, and we're here to ask you to enforce this order, which is not moot. Why? It is not moot because the supplemental order has what all board orders have, which is a notice, which is very important to be posted so that employees and everyone can understand what happened and what rights were violated. And in this case, the supplemental order has a different notice than the than the notice that was from the earlier Ralph's one and Ralph's two decisions. And that is because of the internal audit was never allowed to be was never found to be required until the supplemental. There's there's Ralph's one notice. Was that posted? I'm sorry. It was a Ralph's two, which is the 2010 decision. And I actually I'm not 100 percent certain if it was or was not posted. That's a great. I love that answer. I'm actually not 100 percent sure whether that was or was not posted. I don't know if Ralph's posted the notice from 2010. Perhaps Ralph Ralph's knows. But what I do know is that were they supposed to under the terms of the order of the board in 2010? Absolutely. And so years later, you don't know whether they it seems to me that if that you'd police something like that and if we do, we do in our in our regional office. Can't we assume that you policed it and that it was posted? Actually, there was actually here we go again. I apologize, Your Honor. There was litigation over compliance with Ralph's two. Did that involve the notice posting? Yes, it involved the what what was supposed to be turned over to the union. And I believe it also involved again, Mr. Ryan may know the answer to that better than I know. But what's the difference between you want a new notice? What's the difference between the old one that was posted? Actually, we're not really sure that 100 percent the new the new notice you want now. Sure. The new notice, Your Honor, is that there was an unfair labor practice that took place when the internal audit was not provided under Section eight, a one in five of the Act to the union upon their request because there was no attorney client privilege. And Mr. Ryan with the employees at Ralph's are going to go crazy when they read that. Well, that's part of what the board not that wants anyone to go crazy. But what the board wants, what Ms. Liao was was talking about up here is that the union and it's very important to the board and the NRA that employees have their collective bargaining representative entitled to information that they are able to get about the bargaining unit. And this information in the audit is something that the union, according to the board supplemental order, was entitled to. There's many different reasons in a collective bargaining relationship that a union is entitled to information about its own bargaining unit employees and what happened to them. So in order to get that, the union was seeking the internal audit. And because the company never that I'm aware of argued that this was confidential, they argued attorney client and work product privilege. And because they argued that when the documents were discovered by the union to have been waived, those privileges were waived. It became relevant and that information was properly introduced in this case. And so that's why it's not moot. It may be old, but it isn't moot. And it's important so that we are able to have a resolution of the what type of relevant information is able to be turned over under Section 885 of the Act. What if they just agreed to post that notice without giving you the documents? That would not suffice, Your Honor, because the order that the board issued is an order that requires the turning over of that audit information. What practical effect is going to flow from the documents being turned over in this context? The practical effect would be, well, I guess it would be twofold. First, it would be legally, legally recognizing the force of the National Labor Relations Act, which is that a collective bargaining representative is entitled to information helping it serve the bargaining. We may not know. They don't know what's in this audit regarding their own employees who were locked out and who were actually locked out in favor of employees who were illegally hired. And it could have a lot to do with new negotiations for contracts. Just because, you know, that's one of the harms that's taken place is that the union is not able to advocate on behalf of its employees sufficiently when it doesn't get the information it's entitled to under the NLRA. So the practical effect of this would not only be posting a notice that says to the world, we need to turn over our internal audit and we will not do this again, withhold information from the union. So there would be both a practical, I think, and a legal effect. Well, they can withhold it if it's covered by the attorney-client privilege. You don't dispute that. They can withhold that forever and everybody can do that. The only question in this case is a waiver. That's right. I agree with that. And with the board... It's not a big deal in terms of whether they can withhold documents. They can. It's just that this is a case-specific issue about whether this was a waiver. Right. Absolutely. And whether the Walmart decision covers all of this. That's correct. And we would say that when a union requests information, Section 885 of the National Labor Relations Act says that as a part of a company's good-faith duty to bargain, that includes turning over relevant information. Well, there's no doubt about that. Absolutely. Unless it's privileged. Correct. We absolutely agree. And what happened here is if there is no privilege, then the information is something the union is entitled to. And so that's why it's important that this decision be enforced and isn't moved. But there was a privilege until it was waived in this case. Should there... That... I would not disagree. And when... Not only would you not disagree, you would agree. I would agree. And I also think that the twists and turns procedurally of this case, any of which I'm happy to clear up for any of your honors if you need me to, because of that, the doctrine is that when there is a concurrent proceeding in one court, in another court here, then privilege can... That's the holding of the Walmart case, that privilege can be waived in these concurrent proceedings. And so given that this case was still pending on exceptions before the board, that it is the board's view that the... That Rouse did waive the privilege. And given that, the documents should be turned over. Now... I don't see that this was newly discovered evidence. I'm sorry, Your Honor? I don't understand why this is newly discovered evidence. I mean, this was just newly revealed evidence. I think there's a difference in this context. Under 102.48D, which is a board regulation, which it's entitled to deference on as long as it's not arbitrary or capricious, the rule is what type of evidence can come in. And the phrase newly discovered, Rouse is correct, has been typically interpreted by the NLRB as something that means evidence that was in existence at the time of the hearing. However, in a limited exception, as Walmart holds, if there is an allegation of waiver. So if the evidence is coming in not on its own merits, but if it's coming in for purposes of establishing waiver, then it can... The rule is not interpreted as requiring it to have been in existence at the time of the actual hearing. Do we know from the record what actually happened to the documents? And we got this waiver thing, and there's all this stuff floating around about waiver. But then what happened with the documents, with the audit information? Do we know that? No. Well, the only thing that we know is that the information exists in Rouse's possession and that they submitted it to the U.S. attorney, and the U.S. attorney submitted it to the defendants in the McGowan litigation. Right. That's all that I know about what happened to the documents. And so that's why, you know, there's never been an argument by the company that these documents are confidential or that these documents do not exist. None of those arguments have been made. And so in the absence of those arguments, the board does seek to enforce its order such that the union can have its ability to represent the employees under their bargaining representation. Is the notice from 2 in the record? I don't remember seeing it. Yes. If you look at, in the record, Rouse 2, which is the decision from September 30th of 2010, says that it incorporates Rouse 1, which is the decision from February 19th, 2008. And in the decision from Rouse 1 of February 19th, 2008, there is an order that is issued by the board, and there is then an appendix. And so if you think about this, when- Where is this in the ER? In the ER, I'll tell you momentarily, Your Honor. Rouse 1, Rouse 1 is in the ER at, or it's in SER, rather, SER 1 and 2. That's, or I'm sorry, I apologize, Your Honor, that's actually this court's summary enforcement of that. I can get you while my opponent is standing up here, the exact page references of the orders in the record. Thank you. You're welcome. So if I may address the court's questions about the order that you issued. First of all, we'd like to say that I believe that the concepts in those cases all, however you label it, be it harmless error, be it cleansing taint of a second proceeding after there's already been a valid board order on all of the relevant issues, those cases, dueling, intercollegiate, legitech, stand for the proposition that when there is a duly constituted board or a valid official when before there had not been one, that so long as the issues have been reconsidered by a duly constituted board or agency or person, then those, then those, the second decision can stand. And that's what we have here. There would be no purpose served to go back in time to right before the motion to reopen when we've already got a valid board who looked at everything that was before the initial board in April 2012, along with the fact that there was no response from the company, and looked at what came through from Judge Cokel's decision, all of which included things such as whether the motion filed by the union was timely, to go back. So we know that the second board, and this is, you know, the distinction between this case and the Southwest General decision that you also cited to us. Southwest General was a case in which the D.C. Circuit held that there was a problem because the board itself is not equivalent to the general counsel who initiated the complaint. So a decision by a valid board couldn't necessarily address the initial complaint being issued by an improperly appointed general counsel. Whereas here what you have is similar to intercollegiate and similar to Legitech and Doolin, which is you have the same body reviewing, taking a look at what the same body had looked at that was invalid. So we've got the equivalent going on here of those cases, and Southwest General is distinguishable. I'd also like to speak to Landry, if I might. My opponent brought that up. Landry was a decision that did discuss the difference between structural kinds of problems. But what Landry did not hold, as the intercollegiate court in D.C. stated, didn't hold that there's never going to be an ability to correct or take a, to address issues that took place in an invalid proceeding, whether or not that proceeding was or wasn't structurally invalid. We know after new process in Noel Canning, the board has gone back and looked at cases again and reissued decisions. And that has been held to be fine. And what intercollegiate says- Where? In every circuit in, after new process I could say every circuit. I know that after Noel Canning, I'm sure about cases in the Seventh Circuit. There's a Seventh Circuit case called Big Ridge, which initially was done by a board that was vacated and went back. That in the briefs? All of, no, those cases where the board has gone ahead and done that, that's not in the briefs, your honor. You filed a 20-A-J letter on those? We didn't. We did not because, and the reason we also did not, I want to speak to the court's questions. It's not that we don't think that these cases were, now that the court has focused us in on them, they were out of circuit and we felt like in the unique circumstances here, there is enough to demonstrate that what happened the second time is essentially what happened the first time. So void ab initio means nothing? No, it doesn't mean nothing. What it means is I would point you to page 124 of the intercollegiate decision. And in that decision, what they're saying with regard to the structural deficiency is that we're not looking to whether there's a harmless error from the order itself. Because we agree that order is invalid. The board does not contest that. It's what took place to address what happened in that order. And to address what happened in that order, if you look what happened here, you've got a valid board reviewing every single issue that was in front of the- Where do we see that in the record, that the board reviewed every single issue? You see that in the board's decision in order, the, not September, the March 2014 board decision in order that's issued in front of this court. And if you take a look at the front, it's page one of the decision in order of the March 13th, 2014th order. You see at 360 NLRB number 65, you see that the valid board, whom no one is contesting, addressed the proceedings as they were before the motion to reopen. The board says, in addition, and talks about all of the respondent not responding to any of these things. And then goes- We're over in its exceptions, the respondent did not separately challenge the judge's additional findings. Is that what you're talking about right now? No, I'm talking about right before that, Your Honor, in the middle of the previous paragraph with, in addition, the respondent. In addition, the respondent did not respond to either the union's motion to reopen and as evidence of the respondent's waiver, which the union filed in late 2010, while the case remained before the board. The respondent also failed to respond to the board's November 2011- All right, I got it. So the board did that, and the board affirmed Judge Kokel's decision. And Judge Kokel went through all of the different circumstances that were, Judge Kokel's instructions were to reopen the record on the issues in the motion. So for those reasons, we do believe that the case is cited by the court for the second question that you asked us. Do support the notion that what happened here, when you got, when the company and the union got another decision from the supplemental order that essentially did what would have happened had there been a valid board in April 2012. That this was something that was proper and that this order should be enforced. And what I'd like to do also is move on to the presentation that the union gave. I think your honors discussed the attorney's fees issue or the litigation expenses issue. And absolutely correct that under section 160E, that was something that was never raised by the union. And the union, in fact, never showed any extraordinary circumstances. Even assuming that, which is not true, that general counsel advice memoranda constitute board law, which they don't, as we point out in our brief, that there was a change in law. This took place when they could have come in front of the board. And so on that topic of waiver, you also asked the question, which I'll address, the preliminary threshold question about whether any of the claims the company is making about the void ab initio order are in front of you properly. We did not make that argument in this case. We are not making that argument in this case. We're not making that argument in this case because we feel that we, on the merits of this case, we feel that this is a legitimate board order. I would also point the court out, as the court well knows, that the- We don't, we don't want you to ignore anything. But what we'd like you to understand is we believe our position is it's in this court's discretion to determine its own jurisdiction. We, in this instance, have not made the argument when they first raised this case, that we've not made the argument that it is barred jurisdictionally. Now, we do believe that it could be waivable, and that in this court's discretion, the court could conclude that it's waivable. But I think it is hopefully something, you didn't like that word when someone used hopefully today. But it's something that I think this court should be aware of, that the RELCO decision you sent to us, alongside the SSC-Mystic decision, both seem to have different holdings. SSC-Mystic, the DC circuit did say that raising the composition of a board panel is something that could constitute an extraordinary circumstances. Noel Canning itself, that was a decision where the DC circuit decided that it was going to look at this. And the RELCO decision from the Eighth Circuit says that it's actually, that under 10E of the act, it's not something that someone can just raise first to the court. And what I'm saying here is the National Labor Relations Board is not taking a position in this case that it's jurisdictionally barred. Nor on those two competing decisions. But what we are saying is that once that is looked at, should the court decide that it's got the jurisdiction to look at it, we do believe that what's happened here is the company and union have gotten a valid board order under the unique circumstances and procedural twists and turns of this case. And we think that this non-moot order is one that this court should enforce. And I see I have a minute 44 left, and I'm happy to answer any questions if you don't think I've addressed anything that you may. Thank you very much, Counselor. Thank you. All right, you each have one minute. Okay, your honors, I want to address a few of the questions that the court has brought up. The compliance issue, so earlier your honor asked whether there's going to be a new ULP or something after we get this information, that we wouldn't file any new ULP, but the original ULP is not resolved. It is still pending, and that is still here. And in that we have not received the documents, and we don't have a compliance determination. And so we, initially after Ralph's one, compliance proceedings did commence, and we did receive some documents, but out of, for example, one of the documents that we requested, it was these questionnaires that were sent out to employees about whether they were rehired, whether they, just information about them. And the box that we received had half of the pages were blank. And there were a lot less than what was actually sent out. And so we disputed it. We challenged the compliance. And because of this proceeding, the board, the region, actually withdrew the compliance determination. Thank you, Counsel. So, yeah, okay. That's your minute. Thank you, Counsel. Oh, it is, okay. You're done. Okay, thanks. Just briefly on the issue of compliance, the footnote in the administrative law judge's decision tells you the status of compliance, at least at that point in time. And the status was that the employer turned over everything that was requested of it, except for the attorney client documents, which were not ordered, produced, at least at that level. And in terms of what Counsel just mentioned about they've got papers that were blank, they got envelopes with ashes. The question was, give us everything that was in response to those letters. And some people got these letters, burned them, and put them in an envelope and sent them back to us. And we gave them those. We gave them everything. So there's nothing left to give them except their attorney client privilege documents, our attorney client privilege documents. Thank you, Your Honor. Thank you, Counsel. Thank you all for your argument today. An interesting case. The matter is submitted and we are in recess.
judges: Trott, Owens, Davis